1

2

3

4                  IN THE UNITED STATES DISTRICT COURT

5              FOR THE NORTHERN DISTRICT OF CALIFORNIA

6
B.J.,                                      Case No.  22-cv-03765-MMC
7
             Plaintiff,
8                                          **ORDER GRANTING IN PART AND**
       v.                                  **DENYING IN PART MOTIONS TO**
9                                          **DISMISS**
G6 HOSPITALITY, LLC, et al.,
10
             Defendants.

11          Before the Court are six motions, filed July 10, 2023: (1) Hilton Domestic

12   Operating Company Inc.'s "Motion to Dismiss the Third Amended Complaint Under Rule

13   12(b)(6)" (see Dkt. No. 180 ("Hilton Mot.")), in which VWI Concord LLC dba Hilton

14   Concord and Interstate Management Company, LLC have joined (see Dkt. Nos. 182,

15   186); (2) Leisure Hotel Group LLC dba Clarion Inn's "Motion to Dismiss Plaintiff's Third

16   Amended Complaint Under Rule 12(b)(6)" (see Dkt. No. 181 ("Leisure Mot.")); (3) G6

17   Hospitality, LLC's Motion to Dismiss Plaintiff's Third Amended Complaint" (see Dkt. No.

18   183 ("G6 Mot.")); (4) Concord Inn and Suites LP, dba Studio 6 Concord's "Motion to

19   Dismiss Plaintiff's Third Amended Complaint" (see Dkt. No. 184 ("Concord Mot."));

20   Marriott International, Inc.'s and Residence Inn by Marriott, LLC's "Motion to Dismiss

21   Plaintiff's Third Amended Complaint" (see Dkt. No. 185 ("Marriott Mot.")); and Choice

22   Hotels International, Inc.'s "Motion to Dismiss Plaintiff's Third Amended Complaint" (see

23   Dkt. No. 187 ("Choice Mot.")).  Plaintiff has filed opposition (see Dkt. No. 192 ("Opp.")), to

24   which defendants have replied (see Dkt. Nos. 201, 202, 203, 204, 205, 206, 207, 208).

25   Having read and considered the papers filed in support of and in opposition to the

26   motions, the Court rules as follows.[1]

27   _____

28          [1] By order filed August 24, 2023, the Court took the matter under submission.

## BACKGROUND AND PROCEDURAL HISTORY

In the operative complaint, the Third Amended Complaint ("TAC"), plaintiff asserts a single cause of action against each of the moving and joining defendants under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.  In particular, plaintiff alleges that between 2012 and 2016, she was "trafficked for commercial sex and suffered severe physical and emotional abuse under duress" at five California hotels: (1) Studio 6 Concord ("Studio 6"), (2) San Ramon Marriott, (3) Residence Inn Pleasant Hill – Concord ("Residence Inn Concord"), (4) Clarion Hotel Concord/Walnut Creek ("Clarion Hotel"), and (5) the Hilton Concord (collectively, "the hotels").  (See TAC ¶¶ 13, 16.)[2]  Plaintiff alleges "[t]rafficking at each hotel was open and obvious to anyone working or staying there" (see TAC ¶ 16), and that "[a]s a direct and proximate result of [d]efendants providing a safe house to her trafficker and [d]efendants' consistent refusal to identify and prevent commercial sex trafficking, [she] was trafficked, sexually exploited, and repeatedly victimized" at the above-referenced hotel properties (see TAC ¶ 17).

By order filed May 19, 2023 (see Order Granting Motions to Dismiss; Denying as Moot Motion to Strike ("May 19 Order"), Dkt. No. 174), the Court granted defendants' motions to dismiss the Second Amended Complaint ("SAC"), which pleading sought to hold all moving and joining defendants liable under the TVPRA as beneficiaries of

---

[2] Studio 6 is owned, operated, and managed by defendant Concord Inn and Suites LP ("Concord Inn"), a franchisee of defendant G6 Hospitality, LLC ("G6").  (See SAC ¶ 33.)  The San Ramon Marriott is managed by defendant Marriott International, Inc. ("Marriott").  (See TAC ¶ 33.)  The Residence Inn Concord is owned, operated, and managed by defendant Residence Inn by Marriott, LLC ("Residence Inn"), a franchisee of Marriott.  (See TAC ¶ 33.)  The Clarion Hotel is owned, operated, and managed by defendant Leisure Hotel Group LLC ("Leisure"), a franchisee of defendant Choice Hotels International, Inc. ("Choice").  (See TAC ¶ 33.)  The Hilton Concord is owned and operated by defendant VWI Concord LLC ("VWI"), a franchisee of defendant Hilton Domestic Operating Company, Inc. ("Hilton"), and is managed by defendant Interstate Management Company, LLC ("Interstate").  (See TAC ¶ 33.)  For purposes of this Order, the Court refers to defendants Concord Inn, Residence Inn, Leisure, VWI, Interstate, and Marriott, in its capacity as manager of the San Ramon Marriott, as "the Franchisee Defendants," and refers to G6, Marriott, Choice, and Hilton as "the Franchisor Defendants."

United States District Court
Northern District of California

1    plaintiff's trafficking.  In particular, the Court found plaintiff's TVPRA claims against the

2    Franchisee Defendants, which claims were brought under a theory of direct beneficiary

3    liability, deficient in that plaintiff had not plausibly alleged the Franchisee Defendants

4    participated in a venture they knew or should have known engaged in sex trafficking.

5    (See May 19 Order 9:24-25; 10:1-6.)  As to the Franchisor Defendants, the Court found

6    plaintiff's TVPRA claims, which claims were brought under a theory of vicarious

7    beneficiary liability, deficient in that plaintiff had failed to state a claim for direct

8    beneficiary liability against their respective franchisees, and in any event, had failed to

9    plead sufficient facts to show an agency relationship between the Franchisor Defendants

10   and their franchisees.  (See May 19 Order 12:7-11; 17:16-17; 18:5-6.)  The Court

11   afforded plaintiff leave to amend, with the caveat that plaintiff could not "add any new

12   defendants or new claims . . . without first obtaining leave of court."  (See May 19 Order

13   18:10-11.)

14        Thereafter, plaintiff filed the TAC, which pleading contains facts and allegations

15   similar to those in the SAC, as well as new allegations designed to remedy the defects

16   identified by the Court in its May 19 Order, namely, (1) new allegations regarding the

17   Franchisee Defendants' awareness of plaintiff's trafficking, and (2) new allegations

18   regarding the degree of control exerted by the Franchisor Defendants over their

19   respective franchisees.  The TAC also seeks to hold defendants liable under new

20   theories of liability under the TVPRA.  In particular, whereas plaintiff previously sought to

21   hold the Franchisee and Franchisor Defendants liable under, respectively, direct and

22   vicarious theories of beneficiary liability, plaintiff now seeks to hold the Franchisee

23   Defendants liable as both beneficiaries and perpetrators of her trafficking, and seeks to

24   hold the Franchisor Defendants liable under both direct and vicarious theories of

25   beneficiary liability.

26   / /

27   / /

28   / /

3

United States District Court
Northern District of California

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

By the instant motions, defendants seek an order dismissing the above-titled action in its entirety, on the asserted ground that plaintiff has again failed to state a claim for relief against them under the TVPRA.

The TVPRA "creat[es] criminal offenses for forced labor and sex trafficking[,]" see J.C. v. Choice Hotels Intl.' Inc., 2020 WL 6318707, at *3 (N.D. Cal. Oct. 28, 2020); see

also 18 U.S.C. § 1591,[3] and, in addition to the criminal prohibition, "creates civil liability for two categories of defendants: (1) those who have themselves committed a criminal offense under § 1591 of the TVPRA (i.e., perpetrator liability), and (2) those who are not themselves subject to criminal liability but who knowingly benefitted from participation in a venture that they knew or should have known was committing an offense under § 1591 of the TVPRA (i.e., beneficiary liability)," see A.D. v. Wyndham Hotels & Resorts, Inc., 2020 WL 8674205, at *2 (E.D. Va. July 22, 2020) (emphasis omitted), see also 18 U.S.C. § 1595.[4]

Here, as noted, plaintiff relies on both beneficiary and perpetrator theories of liability. The Court first turns to plaintiff's beneficiary liability claims.

**A. Beneficiary Liability Claims**

To state a § 1595(a) claim under a beneficiary theory, a plaintiff must allege facts

---

[3] The criminal provision of the TVPRA provides criminal penalties for:

(a) Whoever knowingly –

> (1) . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in a n act described in violation of paragraph (1),

knowing . . . that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]
See 18 U.S.C. § 1591.

[4] The civil liability provision of the TVPRA provides:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.
See 18 U.S.C. § 1595(a).

United States District Court
Northern District of California

United States District Court
Northern District of California

plausibly establishing that the defendant "(1) knowingly benefited financially (2) from participation in a venture (3) that [the] [d]efendant knew or should have known engaged in sex trafficking as defined in 18 U.S.C. § 1591." See A.B. v. Shilo Inn, Salem, LLC, 2023 WL 5237714, at *4 (D. Or. Aug. 15, 2023) (internal quotations and citation omitted). "A plaintiff may satisfy these elements in one of two ways." H.G. v. Inter-Cont'l Hotels Corp., 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020).  Specifically, such plaintiff may "show that the defendant's own acts, omissions, and state of mind establish each element[,]" i.e., that such defendant is directly liable under the statute, or such plaintiff may "impute to the defendant the acts, omissions, and state of mind of an agent of the defendant[,]" i.e., that the defendant is indirectly, or vicariously, liable under the statute.  See id.

As noted above, the beneficiary liability claims alleged in the TAC differ from those alleged in the SAC.  In particular, whereas plaintiff previously asserted a direct beneficiary liability claim against each Franchisee Defendant and a vicarious beneficiary liability claim against each Franchisor Defendant, she now asserts a direct beneficiary liability claim against all moving and joining defendants, while maintaining her vicarious beneficiary liability claim against each of the Franchisor Defendants.  The Court first addresses the direct beneficiary liability claim as it pertains to, respectively, the Franchisee and Franchisor Defendants, then turns to the vicarious beneficiary liability claim.

### 1. **Direct Beneficiary Liability Claims**

#### a. **Franchisee Defendants**

In its May 19 Order, the Court found plaintiff plausibly alleged the first prong of a direct beneficiary liability claim against the Franchisee Defendants, namely, that said defendants "knowingly benefitted" from their participation in the alleged venture (see May 19 Order 7:55-16), but failed to plausibly allege the second and third elements, namely, that said defendants "participated in a venture" that they "knew or should have known ha[d] engaged in trafficking" (see May 19 Order 9:24-25; 12:4-5).

To make out the second prong of a direct beneficiary liability claim, i.e., that

defendants "participated in a venture," a plaintiff must "allege that [the defendants] took part in a common undertaking or enterprise involving risk and potential profit." Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 725 (11th Cir. 2021); see also J.M. v. Choice Hotels Int'l, Inc., 2022 WL 10626493, at *4 (E.D. Cal. Oct. 18, 2022) (same). "[T]here are two ways in which a plaintiff can connect the dots between the plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit for purpose of pleading the second prong of a TVPRA claim: by alleging a direct association between the defendant hotel and the plaintiff's trafficker, or by showing a continuous business relationship between a defendant hotel and a sex trafficker where the defendant rented rooms to people it knew or should have known were engaged in sex trafficking." See K.H. v. Riti, Inc., 2023 WL 3644224, at *3 (N.D. Ga. Apr. 17, 2023) (internal quotations and citation omitted). The third prong of a direct beneficiary liability claim overlaps substantially with the second, in that it requires the plaintiff to assert facts supporting the defendant's knowledge of the venture in which it allegedly participated, i.e., that the defendant "rented rooms to people [it] knew or should have known were engaged in sex trafficking." See B.J. v. G6 Hosp., LLC, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023) (internal quotation and citation omitted).

Here, plaintiff sufficiently alleges a "continuous business relationship" existed between plaintiff's trafficker, the above-referenced Franchisee Defendants, and their respective franchisors, based on "[each of the Franchisor Defendant's] role as the primary facilitator or participant in renting rooms . . . and [each of the Franchisee Defendant's] necessary participation in the room rentals by interfacing with customers, including [p]laintiff's trafficker." (See TAC ¶¶ 49, 68, 81, 98, 110.) The question thus presented is whether plaintiff has plausibly alleged the above-referenced Franchisee Defendants, in participating in such venture, knew or should have known they were renting rooms to an individual engaged in trafficking. See K.H., 2023 WL 3644224, at *3; B.J., 2023 WL 3569979, at *5.

/ /

United States District Court
Northern District of California

### (1) Marriott (in its capacity as manager of San Ramon Marriott), Residence Inn, Leisure, VWI, and Interstate

At the outset, the Court notes that plaintiff's allegations regarding her experiences at the above five Franchisee Defendants' hotels are largely duplicative of those set forth in the SAC, which, for the reasons discussed in detail in the May 19 Order, again fail to plead a viable claim. To the extent plaintiff has added allegations in the TAC, such allegations are, for the reasons set forth below, insufficient to state a claim for direct beneficiary liability.

First, although the TAC contains a handful of new allegations regarding "open and obvious" indicators of plaintiff's trafficking at said defendants' hotel properties (see, e.g., TAC ¶ 77 (alleging, as to San Ramon Marriott, "[s]everal times, [plaintiff's] trafficker would jump out from behind a door or, if outside, a bush, and would grab her and threaten her . . . out in the open, in common areas of the hotel within the vicinity of hotel and construction staff"); ¶ 90 (alleging plaintiff's trafficker, during a stay at the Residence Inn, broke into plaintiff's room and "held her down until she ran and sprinted away through the hotel and outside into a grassy area where he caught her, grabbed her, spit in her face, screamed at her, and carried her back into the hotel yelling 'you're a prostitute, no one cares about you'")), such allegations do not permit a plausible inference that said defendants' knew or should have known of plaintiff's trafficking, there being no clear and unambiguous allegation[5] that any hotel employee was in a position to witness any such episode (see May 19 Order 10:23-25).[6]

Next, although the TAC contains new allegations about the above five Franchisee Defendants' employees' interaction with plaintiff and/or her trafficker, such allegations fail

---

[5] The above-quoted excerpts exemplify a pattern, employed throughout the TAC, of referring to events in a manner that obfuscates, rather than elucidates, whatever is alleged to have happened.

[6] The Court also notes that plaintiff's Opposition again mischaracterizes the various allegations. For example, as to defendant Leisure, plaintiff cites to the TAC as alleging that plaintiff's trafficker "often physically attacked [plaintiff] in public areas of the hotel in front of hotel staff." (See Opp. 9:22-23.) The TAC, however, contains no allegation that Leisure staff witnessed plaintiff's trafficker physically abusing her.

to "connect the dots," see K.H., 2023 WL 3644224, at *3, between said defendants and plaintiff's trafficking.

In that regard, with respect to Marriott, plaintiff now alleges that plaintiff's trafficker "was caught by staff and a construction crew when found to be hiding in vacant rooms during a remodel so he could watch and observe [plaintiff] and her room activity," and that "[t]he hotel manager told [plaintiff] that they saw her trafficker doing this and they told her he was always watching her."  (See TAC ¶ 76.)  Plaintiff does not however, allege how hotel staff could infer from such conduct plaintiff was the victim of sex trafficking.

With respect to Residence Inn, plaintiff now alleges that on one occasion when plaintiff "locked herself in her room that was registered under her name," her trafficker "was recognized by front desk staff who made a key for him . . . and he used it to enter [plaintiff's] room where he violently beat her."  (See TAC ¶ 89.)  Plaintiff does not, however, allege the front desk staff knew why such individual had been locked out when they provided him with a key, or who or what any staff member "recognize[d]" him to be. Plaintiff also alleges that, following a violent encounter with her trafficker, she "asked staff to call the police and to save the video[7] but they did not" (see TAC ¶ 90), and that, following a separate violent encounter, she "spoke to the hotel manager about why [Residence Inn staff] didn't help, . . . asked to speak to 'Marriott headquarters,'" and "called Marriott headquarters and spoke to a woman who indicated she would create an incident report" (see TAC ¶¶ 91-92).  Plaintiff does not, however, allege that any Residence Inn staff member witnessed either of the above-referenced episodes, nor does she state what she told any hotel employee or the representative at Marriott headquarters about her circumstances.  Plaintiff further alleges "staff" at the hotel "permitted payment by cash in violation of the requirement of a credit card" (see TAC ¶ 83) but does not explain who was permitted to make such payments, what they were used for, or the nature/scope of the "credit card requirement."

_____

[7] There is no allegation that there existed a video of the episode.

1    With respect to Leisure, plaintiff now alleges that "Clarion Hotel . . . staff gave

2    [plaintiff] a room in the outer building so 'johns' could enter the building without a key and

3    without using the main lobby."  (See TAC ¶ 100.)  Plaintiff does not, however, allege any

4    facts suggesting that hotel employees understood, in giving plaintiff a room located away

5    from the main lobby, what such room would be used for, let alone for the purpose of

6    trafficking.

7    Lastly, with respect to VWI and Interstate, plaintiff now alleges that "[a]t one point,

8    [plaintiff] told the front desk staff by phone that she was a victim trying to get away and

9    they took no action."  (See TAC ¶ 116.)  Plaintiff does not, however, allege that she

10   explained to front desk staff what she was a victim of, nor does she provide any

11   description of their conversation.

12   In sum, the new allegations in the TAC, whether read separately or in combination

13   with those from the SAC and realleged in the TAC, do not establish either a direct

14   association between plaintiff's trafficker and the above-referenced Franchisee

15   Defendants, or a "continuous business relationship" between defendant hotels and

16   plaintiff's trafficker by which said defendants "rented rooms to people [they] knew or

17   should have known were engaged in sex trafficking."  See K.H., 2023 WL 3644224, at *3;

18   cf., e.g., J.G. v. Northbrook Indus., Inc., 619 F. Supp. 3d 1228, 1236 (N.D. Ga. 2022)

19   (finding allegations sufficient to establish "direct association" between hotel defendant

20   and traffickers where "employees, agents, and/or representatives assisted those who

21   trafficked [p]laintiff by acting as lookouts for [p]laintiff's traffickers and informing the

22   traffickers of police activity at the hotel as well as warning [p]laintiff's traffickers about

23   guest complaints and high visitor traffic drawing unwanted attention"; further noting

24   plaintiff alleged a "continuous business relationship" between defendant hotel and

25   traffickers where employees observed plaintiff and other trafficking victims' "inappropriate

26   appearance[s], physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries,

27   loitering, and soliciting male patrons," hotel rooms containing "condoms, drugs, weapons,

28   and a large number of towels, sheets, and tissues," and plaintiffs' sex traffickers

United States District Court
Northern District of California

1  "carr[ying] weapons" on hotel premises (internal quotations and citations omitted)).

2  Under such circumstances, the Court finds plaintiff has failed to plausibly establish

3  the above-referenced Franchisee Defendants "participated in a venture they knew or

4  should have known was engaged in sex trafficking." <u>A.B.</u>, 2023 WL 5237714, at *4.

5  ### (2) Concord Inn[8]

6  The allegations against Concord Inn, by contrast, suffice to show both a "direct

7  association," <u>see</u> <u>K.H. v. Riti, Inc.</u>, 2023 WL 3644224, at *3, between Studio 6 staff,

8  namely, its manager, and plaintiff's trafficker, as well as said individuals' knowledge of

9  trafficking.

10  In particular, plaintiff alleges her trafficker "worked directly with the manager of the

11  Studio 6 Concord to sell [plaintiff] for commercial sex" (<u>see</u> TAC ¶ 54), and that "[w]hen

12  the trafficker was not available, . . . Studio 6['s] . . . manager stepped in and trafficked

13  [plaintiff] to buyers" at the hotel (<u>see</u> TAC ¶ 54).  Plaintiff alleges the manager "observed

14  [plaintiff's] trafficker's tactics and instructed him on [how to be] more discrete," which

15  instructions "helped [plaintiff's] traffickers evade police surveillance" (<u>see</u> TAC ¶ 56),

16  "informed [plaintiff's] trafficker that he too had experience selling women during his time

17  working as a hotel manager in Los Angeles" (<u>see</u> TAC ¶ 57), proposed, after "observing"

18  on hotel security footage an assault on plaintiff by plaintiff's trafficker, "a 'safer' alternative

19  and moved [plaintiff] to a room next to his so that he would be able to hear when the

20  trafficker or any buyers became violent" (<u>see</u> TAC ¶ 58), "arranged discounted room

21  rates and other benefits for [plaintiff's] trafficker in exchange for sexual favors from

22  [plaintiff]" (<u>see</u> TAC ¶ 59), "called to alert [plaintiff's] trafficker whenever the police were

23  nearby or coming to investigate the property[ ] and helped the trafficker evade police

24  detection" (<u>see</u> TAC ¶ 60; <u>see also</u> TAC ¶ 63), "supervised and cared for" plaintiff's

25  children, as well as the children of other women allegedly trafficked at Studio 6 during the

26

27  [8] The Court did not discuss the allegations against Concord Inn in its May 19 Order, for the reason that Concord Inn did not move to dismiss the SAC, and, instead,

28  filed an answer.  (<u>See</u> Dkt. No. 159.)

United States District Court
Northern District of California

1   same period, "while their mothers were being sold for sex within . . . Studio 6's hotel

2   rooms" (see TAC ¶ 61), "demanded to have sex with [plaintiff]," and "assaulted [plaintiff]

3   multiple [times] while he was on duty" (see TAC ¶ 62).

4       Concord Inn argues that, to the extent its employee took part in a common

5   enterprise with plaintiff's sex trafficker, such conduct was "outside the course and scope

6   of [his] employment" and cannot be imputed to Concord Inn.  (See Concord Mot.

7   14:12-13; 14:19-22.)   The Court disagrees.

8       "It is well established that an employee's misconduct can be attributed to the

9   employer under the respondeat superior doctrine, which is based on a deeply rooted

10  sentiment that it would be unjust for an enterprise to disclaim responsibility for injuries

11  occurring in the course of its characteristic activities."  L.Z. v. Cardiovascular Rsch.

12  Found., 2020 WL 2520114, at *4 (Cal. Ct. App. May 18, 2020) (internal quotation and

13  citation omitted).  "This doctrine, however, applies only if the plaintiff can prove the

14  employee committed the tortious conduct within the scope of employment."  See id.

15  (internal quotation and citation omitted).  To determine whether an intentional tort falls

16  within the scope of a tortfeasor's employment, courts consider whether the injury is "an

17  outgrowth of the employment," i.e., the "risk of tortious injury [is] . . . inherent in the

18  working environment or typical of or broadly incidental to the enterprise the employer has

19  undertaken."  See id. (internal quotations, citations, and alterations omitted).

20      "Conversely, vicarious liability is deemed inappropriate where the misconduct does

21  not arise from the conduct of the employer's enterprise but instead arises out of a

22  personal dispute, or is the result of a personal compulsion."  See Farmers Ins. Grp. v.

23  Cnty. of Santa Clara, 11 Cal. 4th 992, 1006 (1995) (internal citations omitted); see also

24  Thorn v. City of Glendale, 28 Cal.App.4th 1379, 1383 (1994) (holding city not vicariously

25  liable for fire damage caused by fire marshal's setting fire to business premises during

26  inspection; finding such conduct "so startling and unusual an occurrence as to be outside

27  those risks which should fairly be imposed on the public employer," given that "[t]he

28  alleged act did not arise from the pursuit of the employer's purpose but was rather the

United States District Court
Northern District of California

12

United States District Court
Northern District of California

result . . . of a personal compulsion"); <u>John R. v. Oakland Unified Sch. Dist.</u>, 48 Cal. 3d 438, 452 (1989) (holding school could not be held vicariously liable for teacher's molestation of student; noting "the connection between the authority conferred on teachers to carry out their instructional duties and the abuse of that authority to indulge in personal, sexual misconduct is simply too attenuated to deem a sexual assault as falling within the range of risks allocable to a teacher's employer" (emphasis omitted)).  Put another way, "the mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of his or her duties does not render the employer vicariously liable"; a key factor in the analysis is "whether the tort [is], in a general way, foreseeable from the employee's duties."  <u>See</u> <u>Farmers</u>, 11 Cal. 4th at 1006.

Here, although G6 argues the "only appreciable benefits of [the manager's] misconduct, if any, flowed directly to [him]" (<u>see</u> G6 Mot. 11:13-14), the Court disagrees, as the manager's conduct can be described as an "outgrowth" of, or "broadly incidental to the enterprise [G6] has undertaken," <u>see</u> <u>L.Z.</u>, 2020 WL 2520114, at *4, namely, the ownership and operation of a hotel, including the renting of rooms, with the proceeds therefrom received by it, even if "at discounted rates"" (<u>see</u> TAC ¶ 59).  In sum, the Court finds the manager's actions in connection with plaintiff's trafficking were not so disconnected from his authority as manager of the hotel property to be deemed outside the scope of his employment.

Moreover, even if the manager's conduct is deemed outside the scope of employment, the TAC includes allegations as to other Studio 6 employees, which the Court finds suffice to support plaintiff's claim that Concord Inn knew or should have known of the sex trafficking alleged here.  In particular, plaintiff alleges "other staff," along with the manager, "supervised and cared for" the children of plaintiff and other trafficking victims "while their mothers were being sold for sex within the Studio 6's hotel rooms" (<u>see</u> TAC ¶ 61), and that she "encountered hotel staff [while] evidencing obvious signs of abuse, including but not limited to visible bruising, malnourishment, being in a drugged state, visible cigarette burns, and clothing inappropriate for the weather" (<u>see</u> TAC ¶ 53).

Under such circumstances, the Court finds plaintiff has stated a direct beneficiary liability claim as to Concord Inn.

### b. **Franchisor defendants**

The Court next considers plaintiff's direct beneficiary liability claims against the Franchisor Defendants.[9]

As noted above, in order to state a direct beneficiary claim under the TVPRA, a plaintiff must allege facts plausibly establishing the defendant "(1) knowingly benefited financially (2) from participation in a venture (3) that [the] [d]efendant knew or should have known engaged in sex trafficking as defined in 18 U.S.C. § 1591." A.B., 2023 WL 5237714, at *4 (internal quotations and citation omitted)

Here, plaintiff alleges the above three Franchisor Defendants participated in the same venture discussed above with respect to the Franchisee Defendants, namely, a "continuous business relationship" between plaintiff's trafficker, the Franchisee Defendants, and the Franchisor Defendants, wherein the Franchisor Defendants acted "as the primary facilitator[s] or participant[s] in renting rooms; . . . controlled booking and payment processing for the rental of rooms at [their] franchised hotels . . . ; [and] fixed the price of room rentals." (See TAC ¶¶ 49, 68, 81, 98, 110; see also TAC ¶ 289.) Plaintiff further alleges the Franchisor Defendants knew or should have known the above-referenced venture was engaged in trafficking because employees of the Franchisee Defendants "were aware of [p]laintiff's trafficking and pursuant to corporate-wide policies reported such activity directly to defendant[s]." (See TAC ¶ 210; see also TAC ¶¶ 232, 250.)

### **(1) Marriott, Choice, and Hilton**

The Court finds the allegations in the TAC insufficient to show the above three

---

[9] At the outset, defendants argue plaintiff's direct beneficiary liability claim, to the extent asserted against the Franchisor Defendants, should be dismissed because plaintiff did not obtain leave of court before adding it. Although there is some question as to the propriety of plaintiffs' adding such allegations without prior approval, the Court, in the interests of judicial economy, finds it preferable to address them at this time.

United States District Court
Northern District of California

Franchisor Defendants' participation in a venture they knew or should have known engaged in sex trafficking.

In particular, the Court has already found, with respect to Marriott (in its capacity as manager of the San Ramon Marriott), Leisure, VWI, and Interstate, that the allegations in the TAC are insufficient to show said Franchisee Defendants rented rooms to people they knew or should have known were engaging in sex trafficking.  Absent allegations sufficient to show such knowledge on the part of the Franchisee Defendants, plaintiff's allegation that the Franchisee Defendants' employees would have reported trafficking to the Franchisor Defendants is not plausible  See Iqbal, 556 U.S. at 679 (holding complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); cf., e.g., J.M., 2023 WL 3456619, at *4 (denying motion to dismiss direct beneficiary claim asserted against franchisor where plaintiff alleged defendant "required franchisee hotels to report sex trafficking to upper-level management, and hotel employees witnessed the obvious signs of her trafficking" (internal quotation, citation, and alteration omitted)).

Under such circumstances, the Court finds plaintiff has failed to state a claim for direct beneficiary liability against Marriott, Choice, and Hilton.

**(2) G6**

The allegations pertaining to G6, however, are sufficient to support a direct beneficiary claim.  Although, as G6 points out, the Studio 6 manager who allegedly worked with plaintiff's trafficker made efforts to keep the trafficker's crimes, and his own involvement therein, hidden (see TAC ¶¶ 56, 58, 60, 63), and, consequently, would not have abided by G6's anti-trafficking protocols, namely, the requirement that franchisee employees "report criminal activity and indic[ia] of human trafficking to G6" (see TAC ¶ 48), plaintiff's allegations regarding other staff members at Studio 6 permit an inference that said staff members had knowledge of her trafficking and would have reported it to G6.

In particular, as discussed above, plaintiff alleges that hotel staff "supervised and

United States District Court
Northern District of California

cared for" the children of plaintiff and other trafficking victims "while their mothers were being sold for sex within the Studio 6's hotel rooms" (see TAC ¶ 61), and that she "encountered hotel staff [while] evidencing obvious signs of abuse, including but not limited to visible bruising, malnourishment, being in a drugged state, visible cigarette burns, and clothing inappropriate for the weather" (see TAC ¶ 53).  Such allegations, which show hotel staff, who, plaintiff alleges, were required to report indicia of human trafficking to the franchisor (see TAC ¶ 48), were aware of both commercial sex activity and the abuse of individuals involved in such activity, and suffice to show Studio 6 employees', and, by extension, G6's, knowledge of the sex trafficking venture here at issue, c.f. A.B. v. Extended Stay America, Inc. et al., 2023 WL 5951390, at *6 (W.D. Wash. Sept. 13, 2023) (dismissing TVPRA claim; finding allegations in complaint, which contained "no indication of force or coercion" against plaintiff, consistent with "voluntary commercial sex activity" rather than sex trafficking); see also J.M., 2023 WL 3456619, at *4 (denying motion to dismiss direct beneficiary claim against franchisor hotel defendant where plaintiff alleged defendant "required franchisee hotels to report sex trafficking to upper-level management, . . . hotel employees witnessed the obvious signs of her trafficking, and would have reported suspected red flags to defendant" (internal quotations, citations, and alterations omitted)).

Under such circumstances, the Court finds plaintiff has stated a claim for direct beneficiary liability against G6.

### c.  Summary – Direct Beneficiary Liability Claims

Accordingly, with the exception of Concord Inn and G6, plaintiff's direct beneficiary liability claims against the Franchisee and Franchisor Defendants are subject to dismissal,

### 2.  Vicarious Beneficiary Liability Claims

Plaintiff also seeks to hold the Franchisor Defendants vicariously liable for their franchisees' alleged violations of § 1595 under both actual and apparent agency theories.

The Franchisor Defendants move to dismiss all said claims. [10]

As to Marriott, Choice, and Hilton, these claims necessarily fail because, as set forth above, plaintiff has failed to state a claim for direct liability against their respective franchisees.  The Court next addresses plaintiff's vicarious liability theory as applied to G6.

### a.  Actual Agency Relationship

An actual agency relationship requires "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking."  See Sun Microsystems, Inc. v. Hynix Semiconductor, Inc., 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009) (citing Restatement (Third) of Agency § 1.01 (2006)).  When determining whether a principal has sufficient authority to control the actions of an agent, such that the principal may be held vicariously liable for the agent's actions, the Ninth Circuit considers the following non-exhaustive list of factors:

> 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities, 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

See U.S. v. Bonds, 608 F.3d 495, 504 (9th Cir. 2010); see also Restatement (Third) of Agency § 7.07 cmt. f (identifying factors useful in determining whether principal exercises sufficient control over agent's work to establish vicarious liability); Jones v. Royal Admin Servs., Inc., 887 F.3d 443, 450 (9th Cir. 2018) (holding "the extent of control exercised by the principal is the essential ingredient" (internal quotations, citation, and alteration

---

[10] Plaintiff's "Motion for Administrative Relief," filed August 25, 2023, wherein plaintiff seeks leave to file an Amended Joint Opposition to defendants' motions for the purpose of addressing her "omission[ ]" of such arguments from her Joint Opposition, is hereby GRANTED, and, in light of the Court's findings herein, defendants' requests to submit replies are hereby DENIED.

omitted)).

"While a franchisor-franchisee relationship does not necessarily create an agency relationship . . . a franchisor may be held liable for a franchisee's actions if the franchisor controls the franchisee's day-to-day operations." J.M., 2022 WL 10626493, at *5 (finding allegations in complaint sufficient to show agency relationship where plaintiff "allege[d] defendants exercised control over the day-to-day operations of the hotels by hosting online bookings, setting hotel employee wages, making employment decisions for the hotels, providing standardized training methods for hotel employees, and fixing hotel room rent prices"). In particular, courts focus on the franchisor's control over the "instrumentality, the conduct, or the specific aspect of the franchisee's business that caused the alleged injury." See Patterson v. Domino's Pizza, LLC, 60 Cal. 4th 474, 498 (2014) (internal quotations and citations omitted).

In its May 19 Order, the Court found plaintiff's allegations in the SAC as to the existence of an agency relationship between the Franchisor and Franchisee Defendants deficient, finding: (1) plaintiff's use of the modifiers "one or more," "may," or "could have" before listing various ways the Franchisor Defendants allegedly exercised control over their respective franchisees "stripped th[o]se allegations of any force" and rendered them "far too uncertain and vague to plausibly establish that the Franchisor Defendants controlled the franchisees' operations to such an extent that the franchisees were Franchisor Defendants' agents" (see May 19 Order 15:6-16:1 (internal quotations and citations omitted)), and (2) plaintiff's remaining agency allegations regarding the Franchisor Defendants' control, to the extent not conclusory, "tend[ed] to show that the franchisors' involvement was limited to uniformity and standardization of the brand, which has been found insufficient to establish the requisite degree of control for an agency relationship" (see May 19 Order 16:2-14). The Court, for the reasons set forth below, finds the allegations in the TAC insufficient to remedy either of those deficiencies.

As to the first of the above-referenced deficiencies, the allegations in the SAC regarding G6's relationship with Concord Inn are virtually identical to those the Court

previously found insufficient (compare TAC ¶¶ 197-217 with SAC ¶¶ 256-276), with the exception that plaintiff has excised the modifiers the Court found problematic in its May 19 Order (compare TAC ¶¶ 206-07 with SAC ¶¶ 265-66). As Hilton points out, "the upshot is that, although plaintiff previously could not identify which (if any) method of alleged control a particular [d]efendant actually exercises, the TAC now claims that every [d]efendant exercises every method of alleged control." (See Hilton Mot. 12:23-13:3 (emphasis in original).) The Court finds such allegations, in light of the modifiers included in the SAC, implausible. See, e.g., Cole v. Sunnyvale, 2010 WL 532428, at *4 (N.D.Cal. Feb.9, 2010) (holding "[t]he court may ... consider the prior allegations [in the original complaint] as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the . . . Amended Complaint plausibly suggests an entitlement to relief, as required under Iqbal"); Stanislaus Food Prod. Co. v. USS-POSCO Indus., 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) (finding, in antitrust case, amended complaint's allegation that anticompetitive agreement occurred in 2006 not plausible in light of earlier complaint's allegation that such agreement occurred in 1986, resulting in dismissal of claim on statute of limitations grounds).

As to the second of the above-referenced deficiencies, although plaintiff has added a few of allegations regarding the nature of G6's involvement with its franchisee hotels, namely, that it "control[s] booking and payment processing for the rental of rooms" (see TAC ¶ 20(vi)), "fixe[s] the price of room rentals" (see TAC ¶ 20(vi)), and "mandates human trafficking prevention training," which training "teaches franchisee employees how to recognize and report human trafficking" (see TAC ¶ 20(viii)), such allegations still fall short of pleading an actual agency relationship between G6 and its franchisees, in that they do not reflect G6's control over the instrumentality of plaintiff's harm, specifically, the hiring, firing, and compensation of individual employees. See Patterson, 60 Cal. 4th at 499 (holding franchisor could not be held vicariously liable for sexual harassment of franchisee employee where franchisor lacked "day-to-day authority over matters such as hiring, firing, direction, supervision, and discipline of the [harassing] employee" (internal

quotation and citation omitted)).

Under such circumstances, to the extent plaintiff's claim against G6 is predicated on actual agency, such claim is subject to dismissal.

### b. Apparent Agency

"To establish liability based on apparent agency, [a] plaintiff must show manifestations by the [d]efendants led her to believe that the hotels were agents of the respective [d]efendants, and that [such] [p]laintiff relied on that belief when engaging with the hotels." See A.B. v. Hilton Worldwide Holdings Inc., 484 F. Supp. 3d 921, 941 (D. Or. 2020) (citing Restatement (Third) of Agency § 2.03 (2006)).

In its May 19 Order, the Court found plaintiff failed to allege facts supporting an apparent agency relationship between the Franchisor Defendants and their respective franchisees, finding: (1) plaintiff "ha[d] not alleged she relied on any representation made by the Franchisor Defendants" (see May 19 Order 17:25-26), and (2) "the factual core of the entire SAC—that criminals trafficked [plaintiff] in various hotels against her will—[was] incompatible with the notion that [plaintiff] somehow relied" on the Franchisor Defendants' representations (see May 19 Order 17:26-28). Although plaintiff once again alleges G6 "holds Studio 6 hotels [out] to the public as possessing authority to act on its behalf" (see TAC ¶ 208), she again fails to allege she relied on such representations, let alone any facts in support thereof, and, the "factual core" of the complaint remains incompatible with a finding that plaintiff somehow relied on G6's representations; indeed, she repeatedly alleges it was her trafficker who rented the rooms at Studio 6, and that she was taken to such rooms against her will. (See, e.g., TAC ¶¶ 48, 50, 52, 53.)

Under such circumstances, to the extent [plaintiff's] claim against G6 is predicated on apparent agency, such claim is subject to dismissal.

### c. Summary – Vicarious Beneficiary Liability Claims

Accordingly, plaintiff's vicarious beneficiary liability claim against the Franchisor Defendants is subject to dismissal.

//

United States District Court
Northern District of California

United States District Court
Northern District of California

**B. Perpetrator Liability Claim**

As noted above, plaintiff now seeks, for the first time, to hold each of the Franchisee Defendants liable as perpetrators of her trafficking.[11]

"Civil perpetrator liability" under § 1595 adopts § 1951's "elements for criminal liability." See J.M., 2023 WL 3456619, at *2.  Section 1951 subjects to criminal sanctions anyone who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person with knowledge that "means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act." See 18 U.S.C. § 1591(a); see also A.D., 2020 WL 8674205, at *2 n.1 (noting § 1591 "imposes an actual knowledge requirement," in contrast to "beneficiary civil liability, which has only a constructive knowledge requirement").  Thus, to state a § 1595(a) claim against a hotel under a perpetrator theory, a plaintiff must allege facts plausibly establishing the defendant "knowingly harbored or maintained a person with knowledge that fraud or force would be used to cause her to engage in a commercial sex act." See J.M., 2023 WL 3456619, at *2 (internal quotation and citation omitted).  The Court next considers whether plaintiff has made the requisite showing.

First, to the extent plaintiff seeks to hold Marriott (in its capacity as manager of the San Ramon Marriott), Leisure, VWI, or Interstate liable as a perpetrator, such claim fails in light of the Court's findings with respect to plaintiff's beneficiary liability claim against said defendants, namely, that the allegations in the TAC do not suffice to show that Marriott, Leisure, VWI, or Interstate should have known, let alone actually knew, about the sex trafficking allegedly taking place on its properties.

---

[11] As with plaintiff's assertion of direct beneficiary liability against the Franchisor Defendants, defendants argue plaintiff's perpetrator liability claim against the Franchisee Defendants should be dismissed because plaintiff did not obtain leave of court before adding it.  Although the Court again recognizes there is some question as to the propriety of plaintiffs' adding such allegations without prior approval, the Court, for the same reason as noted earlier herein, finds it preferable to address them at this time.

1    To the extent plaintiff seeks to hold Concord Inn liable as a perpetrator, however,

2    the facts set forth in the complaint are sufficient to support such a claim.  In that regard,

3    plaintiff, as discussed above, has pled facts demonstrating Concord Inn's manager's

4    actual knowledge of, and indeed, direct involvement in, plaintiff's trafficking, all of which

5    can, for the reasons discussed above, be imputed to Concord Inn.

6    Accordingly, with the exception of Concord Inn, plaintiff's perpetrator liability claim

7    against the Franchisee Defendants is subject to dismissal.

8    **C.  Leave to Amend**

9    As discussed above, to the extent plaintiff has alleged conduct that might put a

10    defendant on notice of sex trafficking, she has not alleged that any of its employees was

11    in a position to observe such conduct, and the conduct she has alleged hotel employees

12    did observe is not sufficient to put them on notice as to sex trafficking.

13    Although plaintiff requests leave to amend to the extent defendants' motions are

14    granted, the Court finds permitting plaintiff to again amend her allegations would appear

15    to be futile.  As set forth in detail herein, the allegations in the TAC are replete with

16    omissions and ambiguities pertaining to plaintiff's experiences at the San Ramon

17    Marriott, the Residence Inn Concord, the Clarion Inn, and the Hilton Concord, which

18    deficiencies were pointed out repeatedly in defendants' briefing in connection with the

19    instant motions, and plaintiff, in her opposition, does not indicate how she would cure

20    them.

21    Moreover, this is not the first time such deficiencies have been called to plaintiff's

22    attention.  The Court, in its May 19 Order, afforded plaintiff leave to amend the SAC,

23    which complaint contained many of the same problematic allegations as the TAC, and

24    defendants, in their motions to dismiss the SAC, advanced many of the same arguments

25    asserted in the instant motions.  The TAC, however, remains devoid of clarifying facts

26    that would appear relatively easy to add if their inclusion would serve to support plaintiff's

27    claim.

28    Accordingly, leave to file a Fourth Amended Complaint will be denied.

**CONCLUSION**

For the reasons stated above, defendants' motions to dismiss are hereby GRANTED in part and DENIED in part, as follows:

1. Concord Inn's motion to dismiss is hereby DENIED

2. G6's motion to dismiss is hereby DENIED;

3. As to all other defendants, the motions are GRANTED.


**IT IS SO ORDERED.**


Dated: September 18, 2023

MAXINE M. CHESNEY
United States District Judge